UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

AARON NEWMON,

Petitioner,

v.

RENEE BAKER, *et al.*,

Respondents.

Case No. 3:13-cv-00383-MMD-WGC

ORDER

Before the Court for decision is a habeas corpus petition under 28 U.S.C. § 2254 brought by Aaron Newmon, a Nevada prisoner.

I.    PROCEDURAL BACKGROUND[1]

Newmon was convicted in Nevada's Seventh Judicial District Court, pursuant to a jury verdict, of battery by a prisoner in relation to an incident at Ely State Prison in May of 2005. The court adjudicated Newmon a habitual criminal and sentenced him to a minimum of five (5) and a maximum of twenty (20) years in the Nevada Department of Corrections. The judgment and sentence was filed on April 8, 2009. Newmon appealed.

The Nevada Supreme Court entered its order of affirmance on December 4, 2009. On January 19, 2010, Newmon filed a post-conviction petition for habeas corpus and a motion for appointment of counsel. With the assistance of appointed counsel, Newmon filed a supplemental brief raising additional claims.

---

[1]Except where indicated, this procedural background is derived from the exhibits provided by the respondents at ECF No. 12.

1    On November 21, 2011, the state district court conducted an evidentiary hearing

2    on the petition. On September 12, 2012, the district court filed its order denying

3    Newmon's petition. Newmon appealed. On June 12, 2013, the Nevada Supreme Court

4    entered an order affirming the denial of Newmon's state habeas corpus petition.

5    On July 17, 2013, this Court received Newmon's original *pro se* federal habeas

6    corpus petition. Pursuant to this Court's screening order, Newmon filed an amended

7    petition on December 9, 2013. The respondents filed an answer to the amended

8    petition, in response to which Newmon filed a traverse.

9    ## II.    STANDARDS OF REVIEW

10   This action is governed by the Antiterrorism and Effective Death Penalty Act

11   (AEDPA). 28 U.S.C. § 2254(d) sets forth the standard of review under AEDPA:

12   An application for a writ of habeas corpus on behalf of a person in
     custody pursuant to the judgment of a State court shall not be granted with
13   respect to any claim that was adjudicated on the merits in State court
     proceedings unless the adjudication of the claim —
14
15   (1) resulted in a decision that was contrary to, or involved an
     unreasonable application of, clearly established Federal law, as
     determined by the Supreme Court of the United States; or
16   (2) resulted in a decision that was based on an unreasonable
     determination of the facts in light of the evidence presented in the State
17   court proceeding.

18   28 U.S.C. § 2254(d).

19   A decision of a state court is "contrary to" clearly established federal law if the

20   state court arrives at a conclusion opposite that reached by the Supreme Court on a

21   question of law or if the state court decides a case differently than the Supreme Court

22   has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-

23   06 (2000). An "unreasonable application" occurs when "a state-court decision

24   unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case."

25   *Id.* at 409. "[A] federal habeas court may not "issue the writ simply because that court

26   concludes in its independent judgment that the relevant state-court decision applied

27   clearly established federal law erroneously or incorrectly." *Id.* at 411.

28   ///

The Supreme Court has explained that "[a] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (per curiam)). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (describing the AEDPA standard as "a difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt") (internal quotation marks and citations omitted).

"[A] federal court may not second-guess a state court's fact-finding process unless, after review of the state-court record, it determines that the state court was not merely wrong, but actually unreasonable." *Taylor v. Maddox*, 366 F.3d 992, 999 (9th Cir. 2004); *see also Miller–El*, 537 U.S. at 340 ("[A] decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding, § 2254(d)(2).").

Because *de novo* review is more favorable to the petitioner, federal courts can *deny* writs of habeas corpus under § 2254 by engaging in *de novo* review rather than applying the deferential AEDPA standard. *Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010).

///

III.    **DISCUSSION**

Newmon's petition advances six grounds in which he claims that he received ineffective assistance of counsel in violation of his constitutional rights. Ineffective assistance of counsel claims are governed by *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, a petitioner must satisfy two prongs to obtain habeas relief — deficient performance by counsel and prejudice. 466 U.S. at 687. With respect to the performance prong, a petitioner must carry the burden of demonstrating that his counsel's performance was so deficient that it fell below an "objective standard of reasonableness." *Id.* at 688. A reviewing court "must indulge a 'strong presumption' that counsel's conduct falls within the wide range of reasonable professional assistance because it is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight." *Bell v. Cone*, 535 U.S. 685, 702 (2002) (quoting *Strickland*, 466 U.S. at 689).

With respect to the prejudice prong, the court "must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent [counsel's] errors." *Strickland*, 466 U.S. at 696. Put another way, a habeas petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome," and "[a]n assessment of the likelihood of a result more favorable to the defendant must exclude the possibility of arbitrariness, whimsy, caprice, 'nullification,' and the like." *Id.* at 694-95.

The Court in *Strickland* emphasized that the ultimate focus of an ineffective assistance of counsel inquiry must be on the fundamental fairness of the proceeding whose result is being challenged. *Id.* If the defendant makes an insufficient showing as to either one of the two Strickland components, the reviewing court need not address the other component. *Id.* at 697.

///

4

## A.   Ground One

In Ground One, Newmon alleges that he received ineffective assistance of counsel (IAC) because his trial counsel failed to advise and counsel him in good faith. In support of this claim, Newmon alleges that counsel recommended that he accept a plea offer (under which he would receive a one to five-year sentence) based on an incident report that counsel had received from the prosecutor. Newmon contends this was faulty advice because the incident report was not admissible evidence and, in fact, was not presented by the State at trial.

This claim fails under *Strickland*. "[A]s a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." *Missouri v. Frye*, 132 S. Ct. 1399, 1408 (2012). The record does not support Newmon's allegation that counsel encouraged him to accept the offer based on erroneous advice. But even if that were the case, the fact that counsel advised Newmon to *accept* the plea offer precludes a finding of *Strickland* prejudice because the plea offer turned out to be far more favorable than the eventual outcome of the proceeding. In short, Newmon cannot show a reasonable probability that, but for counsel's deficient performance, the outcome of the proceeding would have been more favorable to him.

Ground One is denied.

## B.   Ground Two

In Ground Two, Newmon alleges that he received ineffective assistance of counsel because counsel failed to seek a change of venue and present facts relevant to jury bias. In particular, Newmon contends that he could not get a fair trial in Ely, Nevada, because of the influence Ely State Prison has on the community. Newmon also notes that Ely is a very small town with almost no minorities and that venire members were involved in, or had ties to, law enforcement.

Due process requires that the trial court grant a defendant's motion for a change of venue when the trial court is unable to seat an impartial jury because of prejudicial

1   pretrial publicity or an inflamed community atmosphere. *Harris v. Pulley*, 885 F.2d 1354,
2   1361 (9th Cir.1988). To support a motion to transfer venue based on lack of impartiality
3   in the jury pool, a criminal defendant must show either presumed or actual prejudice.
4   *Gallego v. McDaniel*, 124 F.3d 1065, 1070 (9th Cir.1997).

5          Here, Newmon has not alleged facts that can be construed as actual or
6   presumed prejudice of the type that warranted a change of venue. Actual prejudice is
7   present only where "the jurors demonstrated actual partiality or hostility that could not
8   be laid aside." *Harris*, 885 F.3d at 1363. Newmon cites to no such instances in the state
9   court record. Prejudice is to be presumed only in extreme circumstances where the
10  record demonstrates the trial venue was saturated with prejudicial and inflammatory
11  publicity about the crime. *Daniels v. Woodford*, 428 F.3d 1181, 1211 (9th Cir. 2005);;
12  *Ainsworth v. Calderon*, 138 F.3d 787, 795 (9th Cir. 1998), ("[P]rejudice is rarely
13  presumed because saturation defines conditions found only in extreme situations.");
14  *Gallego*, 124 F.3d at 1070. Newmon's allegations do not indicate that such
15  circumstances surrounded his trial.

16         In the absence of a showing that a motion for change of venue had any chance
17  of success, Ground Two must be denied. *See Styers v. Schriro*, 547 F.3d 1026, 1030
18  (9th Cir. 2008) (noting that, to establish ineffective assistance of counsel based on
19  counsel's failure to file a motion for change of venue, a habeas petitioner must show a
20  reasonable probability that such a motion would have been granted).

21         **C.   Ground Three**

22         In Ground Three, Newmon alleges that he received ineffective assistance of
23  counsel because counsel failed to dispute information contained in the pre-sentence
24  report, specifically, Newmon's prison disciplinary history. Newmon claims that prison
25  disciplinary reports are unreliable because correctional officers are both the accusers
26  and the finders of guilt and the standard of proof is merely "some evidence." He cites to
27  an incident in which he claims he was found guilty of an assault he did not commit.
28  ///

At the sentencing hearing, Newmon's counsel argued to the court as follows:

[W]ith respect to his disciplinary history, the statement by the state is that Mr. Newmon is not a model prisoner, and that's correct. And when you first look at this, it is a rather lengthy disciplinary history, but I would point out a couple of things. One is certainly that the disciplinary system is not akin to the criminal justice system that we have here. There are no rules of evidence that are followed. And he is accused by a correctional officer, prosecuted by a correctional officer, and judged by a correctional officer. And when you look at the — and without, as I said, the rules of evidence, and when you look at many of these charges, and while there are quite a few of them, you find that a number of them are things like delaying, disobedience, abusive language, and that kind of thing.

ECF No. 12-21 at 5.[2] Newmon has not specified what additional steps counsel should have taken to challenge the prison disciplinary history. Moreover, the trial court indicated that its sentencing decision was based more upon the seriousness of Newmon's criminal convictions rather than his prison record. *Id.* at 5-6. Accordingly, Newmon has demonstrated neither the deficient performance, nor the prejudice necessary to obtain relief under *Strickland*.

Ground Three is denied.

## D.    Ground Four

In Ground Four, Newmon alleges that he received ineffective assistance of counsel because counsel failed to call the victim (Otties Matthews) and a nurse at Ely State Prison (Angela Gregersen) as defense witnesses at trial. According to Newmon, Gregersen could have discredited Correctional Officer Zimmer's preliminary hearing testimony that he examined Newmon after the alleged assault and found no marks, cuts, or bruises. Newmon contends that Matthews would have supported Newmon's defense of self-defense by affirming that he (Matthews) was the aggressor.

The State called Gregersen as a witness for the prosecution. ECF No. 12-19 at 23-25. She testified about the results of her post-fight examinations of both Matthews and Newmon. Defense counsel cross-examined Gregersen on this testimony. *Id.* at 25-26. Newmon has not demonstrated how the presentation of Gregersen's testimony as a

---

[2]References to page numbers for ECF documents are based on ECF pagination.

1  State's witness rather than a defense witness may have adversely impacted the

2  outcome of his case.

3       With regard to the failure to call Matthews, both trial counsel and Matthews

4  testified at Newmon's state post-conviction hearing. ECF No. 12-35. In its order denying

5  post-conviction relief, the state district court addressed the issue as follows:

6       Attorney Brown made a conscious decision not to call the victim to
testify at trial against Petitioner. At the evidentiary hearing, Attorney Brown

7  iterated his concern that the victim's testimony would substantially harm
Petitioner's claims of self-defense. Attorney Brown expressed concern that

8  the victim's testimony could make Petitioner's behavior appear to be
inspired by revenge, instead of self-defense. At the evidentiary hearing,

9  the victim testified that he was the aggressor, but that he did not want to
admit fault for fear of criminal liability. Now that the statute of limitations

10  has run, the victim appears to have no qualms with admitting his role in
the incident. However, it cannot be said that Attorney Brown erred for

11  failing to call the victim during the trial. At the time, the victim's story was
completely different from what it is today. Attorney Brown made a sound

12  strategy to prevent the jurors from hearing potentially devastating
testimony from the victim. Because Attorney Brown's strategy decision is

13  entirely reasonable, there is no error.

14       Assuming, *arguendo*, that Attorney Brown had erred for failing to
introduce evidence pertaining to Petitioner's self-defense claim or for

15  failing to call the victim to testify, Petitioner's claim would still fail. Had the
victim's criminal history been admitted, it is likely that Petitioner's criminal

16  history would have followed, demonstrating his propensity towards violent
behavior. The victim testified that his story, at the time of trial, was that

17  Petitioner was the aggressor. Had he testified, it can be assumed that he
would have iterated the same. There is no evidence that the outcome of

18  the case would have been different if evidence of the victim's testimony
and criminal history were admitted. In stark contrast, the evidence

19  suggests that had the victim testified, Petitioner's claims of self-defense
would have had substantially less credibility. Finally, with the introduction

20  of the victim's and Petitioner's criminal histories, the jury would have
realized both had checkered pasts involving violent crimes. It is likely that

21  in those circumstances, the jury would have let the evidence speak for
itself — that the victim was handcuffed at the time the altercation occurred

22  and that Petitioner was not handcuffed. Officers saw Petitioner striking the
victim and did not see the victim do anything except attempt to shield his

23  body from the blows. Petitioner had blood on his hands that did not appear
to be from any wounds he sustained. The victim reported that Petitioner

24  was the aggressor. Therefore, Petition has failed to establish that actual
prejudice occurred because there is no evidence that the results of the

25  trial would have been different.

26       Petitioner has failed to demonstrate that Attorney Brown's conduct
was deficient, or that prejudice occurred, for counsel's failure to introduce

27  the victim's criminal record or the victim's testimony.

28  ECF No. 12-38 at 19-21 (citations to the record omitted).

In affirming the lower court's decision, the Nevada Supreme Court addressed Newmon's IAC claim as follows:

> Newmon contends that the district court erred by not finding that trial counsel was ineffective for failing to present additional evidence relevant to his theory of self-defense. Newmon specifically claims that counsel should have called the victim to testify and introduced evidence pertaining to his "violent propensities" and criminal history. We disagree with Newmon's contention.
>
> When reviewing the district court's resolution of an ineffective-assistance claim, we give deference to the court's factual findings if they are supported by substantial evidence and not clearly wrong but review the court's application of the law to those facts de novo. *Lader v. Warden*, 121 Nev. 682, 686, 120 P.3d 1164, 1166 (2005). Here, the district court conducted an evidentiary hearing, heard testimony from the victim and Newmon's trial counsel, and concluded that counsel's performance was not deficient and Newmon failed to demonstrate prejudice. *See Strickland v. Washington*, 466 U.S. 668, 687-88, 694 (1984); *Kirksey v. State*, 112 Nev. 980, 987, 923 P.2d 1102, 1107 (1996). The district court's finding is supported by substantial evidence and not clearly wrong, and Newmon has not demonstrated that the district court erred as a matter of law. Therefore, we conclude that the district court did not err by rejecting Newmon's claim.

ECF No. 12-42 at 2-3 (footnote omitted).

The Nevada courts applied the correct federal law standard in adjudicating the claim. Newmon has not shown the state court's decision was an unreasonable application of that standard or based on an unreasonable determination of the facts. Thus, 2254(d) requires this court to defer to the state court decision.

Ground Four is denied.

## E.    Ground Five

In Ground Five, Newmon alleges that he received ineffective assistance of counsel because counsel failed "to address courtroom official bias." ECF No. 7 at 23. In support of this claim, Newmon claims that he notified the court that the clothing he was issued to wear at trial did not fit properly and was not clean, but that his counsel did not assist him in rectifying the problem. He also asserts that the bailiff, who was involved in issuing the clothing, was a former corrections officer at Ely State Prison.

///

///

9

The trial transcript includes the following exchange:

THE COURT: Okay. Which brings us to the next issue. Mr. Newmon, I understand that you want your — some sort of restraining device for your hair, is that correct?

THE DEFENDANT: Yes.

THE COURT: Okay. And Mr. Collard, you've got one, correct? He can have it. He can restrain his hair.

THE COURT: Now the next issue I understand is clothing.

THE DEFENDANT: Yes.

THE COURT: I understand that you have been provided with civilian clothing and you don't want to wear it?

THE DEFENDANT: It's not necessarily I don't want to wear it. It's because the sizes are incorrect. You know, I guess they — I know the — as far as the facility, you know, I was coming to court, you know, even though I'm sure they was notified like two or three weeks ago.

And I told them, you know, I'm five-two. I need my sizes. You know, I need to be measured. And no one ever came to get my sizes or anything like that. And they brought me down here assuming what my size was without even asking me, you know, and the size must be incorrect. I mean, I don't even know my own size unless I look at my t-shirts and my boxers, so I know they don't know it, so it's going to be slouchy and it's going to be unpresentable. And I'm not going to wear that.

And not only that, my hair — my hair — I asked them to let me put a rubber band in my hair, and they told me no, because there's some type of security issue, which I know that's not —

THE COURT: Okay. Well, I've already heard that, I've already dealt with that issue, and you're going to be able to put your hair with that whatever you call it.

THE DEFENDANT: Yeah.

THE COURT: It's not a rubber band. What do you call it?

THE CLERK: A scrunchy.

THE COURT: A scrunchy. And the Court notes that it's not fluffy and it's not bright colors. From here it looks like — what is it — a stretchable rubber band, is what it looks like, but it's not rubber, right? Okay. So that issue's already taken care of.

Okay. As far as the clothing, what sort of clothes — anybody know, what sort of clothing is it?

10

1   THE BAILIFF: I think the shirt will fit, for sure. And the pants, we
    would have to try them on, but we pretty much knew his size, Your Honor.

2

3   THE COURT: Okay. Well, this is going to be your choice. We're
    going to take another recess real soon here, and you can go back, you
    can put those clothes on. Then bring him back into court and I'll make a

4   record about whether the clothes fit or not, and then it'll be your choice.
    You can either wear what you've got on or you can wear the clothes that

5   they provided you. Nobody's going to make you wear your orange
    jumpsuit. All right?

6

7   THE DEFENDANT: All right.

8   THE COURT: But you're also not going to — if the clothes fit you
    and you look presentable, then you don't get to decide. All right? I get to
    decide.

9

10  Are there any other issues?

    THE PROSECUTOR: No, sir.
11

12  THE COURT: There was one more. What was it about the shoes?

13  THE DEFENDANT: Yeah, my shoes.

14  THE COURT: Okay. What sort of shoes are you wearing now?

15  THE DEFENDANT: Some type of State boots. And I have shoes in
    my property in Ely, but they refused to give them to me. So that's my last
16  issue.

17  THE COURT: All right. The Court notes that the counsel tables are
    draped, and the drapes go all the way to the carpet. So no juror is going to
18  see — you could have bunny slippers and the jurors would not see them.
    Okay? So the shoes are not an issue.

19  Okay. Go try your clothes on, and we'll reconvene.

20                                    . . .

21  THE COURT: Please be seated. Court is back in session, and the
    defendant is in the clothes — is that short or long sleeved?
22

23  THE DEFENDANT: Short.

24  THE COURT: Okay. The Court notes that he's wearing a short-
    sleeved white shirt that is clean and pressed and is presentable. The
    pant's [sic] I don't know what he's wearing because I can't see and neither
25  can the jurors. Do they fit?

26  THE DEFENDANT: Yeah, they fit.

27  ECF No. 12-19 at 5.

28  ///

1   Newmon has not shown a violation of his constitutional rights arising from
2   counsel's failure to address the issue of his appearance. While a defendant "may not be
3   compelled to be tried before a jury in identifiable prison clothes," he does not have a
4   right to demand specific attire. *United States v. Rogers*, 769 F.2d 1418, 1420 (9th
5   Cir.1985). Counsel did not have recognized legal grounds to support an objection to
6   Newmon's clothing or appearance. In his reply, Newmon argues that the trial judge's
7   point that the jurors could not see shoes was not valid because the jurors could see
8   them when he got up to testify. However, he has not established that the jurors could
9   identify the shoes as "prison" shoes.

10   Moreover, given the nature of the crime at issue and the evidence presented at
11   trial, the jury was certainly aware of Newmon's incarceration, independent of what he
12   was wearing at trial. Thus, he cannot show that he suffered prejudice as a result of
13   counsel's failure to object to his appearance.

14   Ground Five is denied.

15   **F.   Ground Six**

16   In Ground Six, Newmon alleges that he received ineffective assistance of
17   counsel because counsel failed to challenge the prosecutor's reference to a video while
18   presenting the testimony of Nurse Gregersen. The prosecutor called Gregersen as a
19   rebuttal witness and asked her if she remembered what the victim was wearing when
20   she examined him.[3] ECF No. 12-19 at 30. In doing so, the prosecutor asked if she
21   remembered seeing a video of the examination in the prosecutor's office. *Id.* Newmon
22   contends the reference to the video was prosecutorial misconduct because the video
23   was never presented to the jury and he did not have an opportunity to review it.

24   This claim is plainly without merit. Newmon claims that prison regulations
25   prevented him from seeing the video, but he has made no showing that his counsel was

26

27   _____
      [3]Newmon alleges in his petition that Gregersen was questioned about what he —
28   i.e., Newmon — was wearing but the transcript indicates that she was asked about what
      the victim, Matthews, was wearing.

1  prevented from seeing the video. In addition, this court discerns no prejudice arising

2  from the prosecutor's brief reference to the video. Ground Six is denied.

3  **IV.    CONCLUSION**

4       For the reasons set forth above, Newmon's petition for habeas relief is denied.

5                                    *Certificate of Appealability*

6       This is a final order adverse to the petitioner. As such, Rule 11 of the Rules

7  Governing Section 2254 Cases requires this court to issue or deny a certificate of

8  appealability (COA). Accordingly, the court has *sua sponte* evaluated the claims within

9  the petition for suitability for the issuance of a COA. See 28 U.S.C. § 2253(c); *Turner v.*

10 *Calderon*, 281 F.3d 851, 864-65 (9th Cir. 2002).

11      Pursuant to 28 U.S.C. § 2253(c)(2), a COA may issue only when the petitioner

12 "has made a substantial showing of the denial of a constitutional right." With respect to

13 claims rejected on the merits, a petitioner "must demonstrate that reasonable jurists

14 would find the district court's assessment of the constitutional claims debatable or

15 wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463

16 U.S. 880, 893 & n.4 (1983)). For procedural rulings, a COA will issue only if reasonable

17 jurists could debate (1) whether the petition states a valid claim of the denial of a

18 constitutional right and (2) whether the court's procedural ruling was correct. *Id.*

19      Having reviewed its determinations and rulings in adjudicating Newmon's

20 petition, the court declines to issue a certificate of appealability for its resolution of any

21 procedural issues or any of Newmon's habeas claims.

22      It is therefore ordered that petitioner's amended petition for writ of habeas corpus

23 (ECF No. 7) is denied. The Clerk will enter judgment accordingly.

24      It is further ordered that a certificate of appealability is denied.

25      DATED THIS 18th day of July 2016.

26

27                                         _____
                                           MIRANDA M. DU
28                                         UNITED STATES DISTRICT JUDGE

                                                  13